OPINION OF THE COURT
David Gilman, J.
On August 4, 1983, a juvenile delinquency petition was filed against the respondent. By notice of motion, dated August 18, the respondent moved to suppress statements made by him to the police officer after he was taken into custody. The presentment agency submitted an answering affirmation on September 1, opposing the motion to suppress.
On September 13, the court granted respondent’s motion to the extent that a pretrial suppression hearing was ordered to be held prior to trial. At the suppression hearing held on October 19, respondent alleged that questions were asked of him and statements were taken by the police officer without his parent or a person legally responsible for his care or a person with whom he resides being present and, therefore, the statements should be suppressed. The issue before the court requires a two-tier analysis. First, *637 whether the statements purported to have been made to the police officer should be suppressed because a “parent or other person legally responsible for the child’s care or * * * the person with whom the child resides” was not notified as required by subdivision 3 of section 305.2 of the Family Court Act. Secondly, if such person was properly notified, then under what circumstances may the respondent be questioned? There is no definitive rule of law on this point. It is clear, however, that a respondent cannot be questioned by the police unless there is a showing of reasonable efforts to notify the parent or guardian. Once such a condition is fulfilled, then, and only then, can the court determine what comprises the proper circumstances for questioning. Such an approach is required under section 305.2 of the Family Court Act.
Subdivision 3 of section 305.2 of the Family Court Act requires that if a child is taken into custody “the parent or other person legally responsible for the child’s care, or if such legally responsible person is unavailable the person with whom the child resides” be notified that the child is being taken into custody. The police in this case did notify the respondent’s mother. The police went to respondent’s home at approximately 11:00 a.m. on July 27, 1983. The respondent was home, but his mother was at work. The police officer called the mother at her job and told her that he was taking her son into custody and to the police station. The mother said that she would leave work and come down to the station house. The police officer took the respondent forthwith to the station house. Approximately two hours later, when respondent’s mother had not appeared, the police called her at her job. She informed the police officer that she was still at work and could not leave yet. The police officer waited until 3:20 p.m. and called the mother again at her job. She said that she would be leaving shortly.
At 4:30 p.m. the police officer received a call from the respondent’s uncle, Reggie G. Mr. G. told the police officer that respondent’s mother would be unable to go to the police station and that she asked him to appear for her. At approximately 5:30 p.m., Mr. G. arrived at the police station and identified himself as the respondent’s uncle. He *638 then went over to the respondent and put his arm around him. The police officer gave the respondent and his uncle an opportunity to confer privately. The police officer read respondent his Miranda rights in the presence of his uncle. Respondent, in the presence of his uncle, waived his rights and made certain admissions.
The court finds that the police officer made reasonable efforts and did notify the respondent’s mother as required by subdivisions 3 and 4 of section 305.2 of the Family Court Act. The court can now determine under the facts and circumstances of this case, whether the police properly questioned the respondent.
Section 305.2 of the Family Court Act provides, in part:
“7. A child shall not be questioned pursuant to this section unless he and a person required to be notified pursuant to subdivision three if present, have been advised:
“(a) of the child’s right to remain silent;
“(b) that the statements made by the child may be used in a court of law;
“(c) of the child’s right to have an attorney present at such questioning; and
“(d) of the child’s right to have an attorney provided for him without charge if he is indigent.
“8. In determining the suitability of questioning and determining the reasonable period of time for questioning such a child, the child’s age, the presence or absence of his parents or other persons legally responsible for his care and notification pursuant to subdivision three shall be included among relevant considerations.” (Emphasis added.)
If, in fact, as in the instant case, a parent or person required to be notified is not present, the propriety of the police officer’s decision to question the respondent depends upon an examination of all the relevant factors present. The presence or absence of a parent at the time of questioning is not in and of itself determinative on the issue; it is merely one factor which the court must consider. (Family Ct Act, § 305.2, subd 8; see Matter of Brian P. T., 58 AD2d 868; Matter of Lawrence W., 77 AD2d 570; Matter of Raphael A., 53 AD2d 592.)
*639 In this case, the respondent was 15½ years of age at the time of the alleged incident. The police officer made three separate attempts to find out from the respondent’s mother when she would be coming to the police station. Each time the police inquired, they received a vague response from the respondent’s mother as to when she would be leaving work. The police finally received word from respondent’s uncle that the mother requested that he appear at the police station on her behalf. It was not until the respondent’s uncle arrived at the police station, approximately 5 ¥2 hours after respondent was taken into custody, and after he had an opportunity to confer privately with the respondent that the police advised the respondent and his uncle of the Miranda rights and commenced questioning. The interaction between the respondent and his uncle indicated to the police officer that they had a relationship of trust and confidence. Moreover, it is important to note that respondent’s mother never called nor stopped by the police station at any time to inquire of her son. In fact, the mother has never appeared in court on behalf of the respondent in this case. She has, however, called the court twice to report that she would not be coming to court.
The court finds that the police properly notified respondent’s .mother and provided her with an ample opportunity to be present. In addition, the police did not begin to question the respondent until after the respondent’s uncle had notified them that the mother would not be present and that she had asked him to appear. After his arrival, the uncle and the respondent had an opportunity to confer privately before the police officer advised both the respondent and his uncle of the Miranda rights.
Under the totality of circumstances present in this case, the court finds that neither the respondent’s statutory nor constitutional rights were violated by the police notification procedure or the circumstances under which questioning of the respondent was conducted. Accordingly, respondent’s motion to suppress is denied. The case is set down for trial in Part I on December 6, 1983.